Opinion of the Court by
Judge Mills.
[Absent Chief Justice Bibb.]
On the 20th of April, 1822, Ramsey, the complainant below and defendant in error, executed to Baugh, the plaintiff in error and defendant below, a promissory note, in usual form, simply stipulating *156 to pay one hundred dollars in the ensuing July. On this note Baugh brought suit, and recovered his judgment at law, for the amount.
Allegations of Ramsay’s bill.
Bough’s answer.
Decree of the circuit court.
To admit parol evidence to prove a covenant to pay $100, no more saying was for the payment of Commonwealth’s paper would be against the general rule, that the highest grade of evidence shall prevail.
*156 Ramsey filed his bill with injunction, stating that the note was executed for the price of a horse sold to him by Baugh, and that the real contract was, that the price of the horse should be $100 in Commonwealth’s bank bills; that he was ignorant and illiterate, and unacquainted with the legal effect of obligations, and supposed that the note would only compel him to pay the nominal amount in Bank paper, which was then worth not over half its nominal value, in specie; but that “either through fraud or mistake on the part of Baugh,” the note was drawn for one hundred dollars generally, and that when it became due, Baugh refused to receive any thing but United States currency, and he refused to pay. He prays relief to the extent of the difference between specie and bank paper.
Baugh in his answer, denies that the contract was for Commonwealth’s paper, or that there was any fraud or mistake in drawing the note, and relies upon the writing as conclusive as to what the contract really was.
The court below scaled the judgment to the value of paper of the Commonwealth’s Bank; and perpetuated the injunction that far. To reverse which decree Baugh has prosecuted his writ of error.
Before we look into the depositions taken, to ascertain what the contract really is, as there proved, a previous question deserves consideration, and that is, how far such evidence is admissible to vary the terms of the note, which is written evidence, and of a higher grade than that offered to overrule it.
In the note there can be no latent ambiguity drawn as it is, it evidently meant one hundred real dollars, or what is properly so termed, and the attempt by the parol evidence is nothing more or less than to add a qualifying clause; such as “in Com *157 monwealth’s paper,” materially varying the import of the written instrument, as first made by the parties. To admit such testimony is directly contrary to the well settled principle of law, that evidence of the highest grade shall prevail. For, says Starkie, vol. 3, p. 1002, “where the terms of an agreement are reduced to writing, the document itself being constituted by the parties, as the true and proper expositor of their admissions and intentions is the only instrument of evidence in respect of that agreement, which the law will recognize, so long as it exists, for the purpose of evidence ” And the same author, in page 997, thus eloquently and concisely enumerates the evils of a contrary doctrine:
The rules of evidence as to parol evidence against the written agreement of the parties, is the same in chancery as in comnon law courts.
*157 “To admit oral evidence as a substitute for instruments, to which by reason of their superior authority, and permanent qualities, and exclusive weight and authority is given, by the solemn compact of the parties, would be to substitute the inferior for the superior degree of evidence-conjecture for fact—presumption for the highest degree of legal authority—loose recollection certainty of memory for the most sure and faithful memorials which human ingenuity can devise the law adopt;—to introduce a dangerous laxity, and uncertainty as to all the titles to property, which, instead of depending on certain fixed and unalterable memorials, would thus be made to depend upon the frail memories of witnesses, and be perpetually liable to be impeached by fraudulent and corrupt practices, in short, the great advantages, which are peculiar to written evidence, would be, in a great measure, if not entirely, sacrificed.”
A general rule so firmly established and well supported by reason, does, prima facie, settle the case of this complainant, unless he can escape, by some of the exceptions, which we shall presently examine.
It is a common error to suppose that these are rigid principles of law, the severity of which will be mitigated by a court of equity, and that the party who feels their operation has nothing to do but to *158 change his ground, and get into the climate of the chancellor, to meet with different treatment. This, however, will be found a vain and fruitless escape. For it has often been repeated on undoubted authority, (and by what appears in our chancery practice in this country, it is as often forgotten,) that the rules of evidence in both courts are the same, and that what is inadmissible in one, cannot be received in the other. It is true, that chancery will correct mistakes and detect fraud; but when a court of law can give as complete redress for either, as a court of chancery, it has as complete jurisdiction, and the same evidence is necessary to substantiate the fraud or mistake in both courts.
Mistake in drawing, and fraud, in either procuring the writing to be executed, or in framing it differently from what was intended, and concealing that difference by address, may be shewn by parol evidence.
It seems the allegation, that the writer agreement was drawn for dollars merely, instead of commonwealth’s paper “by either fraud or mistake “without saying which, is not sufficient to admit the parol proof.
It is true there are exceptions to the general rule before laid down, and that a mistake made in the writing may, sometimes, be corrected by parol evidence, and fraud either in procuring the writing to be executed, or in framing it differently from what was intended, and concealing that difference by some address, may be shewn by parol proof.
The bill of the complainant in this case, when laying a ground for the admission of parol evidence shews, that he is uncertain, whether it was through fraud or mistake, that the writing happened to be as it is. He alleges that it was either one or the other, as if he intended to prove one or the other, as his witnesses should say, and states no facts or circumstances of, or by which, either fraud or mistake happened, and the general allegations of his bill are not aided in detail by the introduction of the proof he has adduced. He does allege that he is illiterate and ignorant of the extent and effect of written obligations by law; but he does not pretend to swear that he did not understand the language of this one, or that his adversary, taking advantage of his want of letters, represented to him that the note was written differently from what it is, or that he was assured that it bound him to pay bank paper only. On the contrary, one of his strogest witnesses deposes, that it was mentioned at the time, that the note was not drawn for Commonwealth’s paper. Indeed it is not pretended that the *159 opposite party availed himself in any manner of his ignorance of law, to lay the ground for contending that there was even a mistake consisting in matter of law.
Tho bare ground that the contract was for commonwealth’s paper and the note written otherwise without shewing the note was fraudulently drawn, is not sufficient to admit the parol evidence.
Turner, for plaintiff; Caperton, for defendant.
In short, the bill goes on the bare ground that the contract was for bank paper, and the note written otherwise, and that he has a right, of course, to make the writing conform to the parol proof of what the contract was, without shewing that the writing was, in any degree, fraudulently drawn differently from the contract. To permit this, would introduce all the evils consequent upon the admission of parol evidence to vary or contradict written instruments. The conflict in the testimony adduced here on each side, shews what uncertainty attends such admission, and the case itself is a good commentary on the wisdom of the opposite rule. We, therefore conceive that the bill of the complainant, lays no ground for the admission of the parol evidence; that the writing itself remains conclusive of this controversy, and that the court below erred in granting the relief prayed.
The decree must be reversed, with costs, and the cause be remanded, with directions to dissolve the injunction, and dismiss the bill, with damages and costs.